## HORTON v. STANLEY.

November 2, 1833.

*Motion to dismiss exceptions to report of referees.*

Although a submission under the act of 1705 stipulates " the award to be final and conclusive, and neither subject to appeal, exception or stay of execution," the court is not ousted of its jurisdiction, but has the right to entertain exceptions to the award.

But the court will not sustain exceptions where all matters intended to be submitted have been decided on by the referees in good faith, although it is manifest the court would have decided the subject differently.

Exceptions will be sustained in cases of fraud, bribery, corruption or an award not according to the submission.

IN this case the parties had filed an agreement in writing submitting " all matters in variance in the above case to the decision of James Caldwell, Joseph Randall, and Albert G. Pearson, the award of whom, or a majority of whom, to be final and conclusive, and neither subject to appeal, exception or stay of execution."

There was an award for the plaintiff. The defendant filed exceptions. The case came before the court upon a motion of the plaintiff's counsel to dismiss the exceptions, *without an inquiry into their merits, upon the ground that the defendant had agreed there should be no exception.*

*D. P. Brown,* for plaintiff.
*Meredith,* for defendant.

The opinion of the Court (BARNES, *President* ; COXE, J. ; and PETTIT, J.) was delivered by

PETTIT, J.—It is conceded that the submission was under the act of assembly of 1705. *5 Serg. & Rawle* 51.

The general character of this act has been very often considered, and many of the principles which govern the courts upon applications to set aside awards made under it, are too firmly established to be again the subject of discussion. Thus, where there has been corruption or misbehaviour in the referees, or plain and obvious mistake in the proceedings, either in matter of fact or matter of law, the court will set aside the award.

In the case however of Messina *v.* Hertzog, *5 Binn.* 337, the sub-

[Horton v. Stanley.]

mission was not merely in terms under the act of 1705, but there was an additional agreement, that the award should be *final* and *conclusive.*   The court decided, after argument, that neither party was barred from filing exceptions by the terms " final and conclusive ;" the chief justice declaring it to be " unnecessary to decide whether a party shall be permitted to except after a plain and clear agreement not to file exceptions ;" and Brackenridge, Justice, adding, that " if the defendant had agreed not to file exceptions he would have been bound," and that " it is a question of intention."

So far had the judges of the supreme court gone, when the present parties made a submission under the act of 1705, stipulating that the award should be " final and conclusive, and subject neither to appeal, exception or stay of execution."   The language used amounts, we think, to a clear agreement not to file exceptions, and the question is fully presented : Are the court bound by such an agreement to dismiss every exception ? and if not, then will they give any, and if any, what effect to the agreement ?

The *dictum* of Judge Brackenridge was not called for by the case, and was probably qualified in his own mind by the character of the exceptions before him ; and certainly, if construed without any qualification, would not have concluded him, had the question been directly presented for adjudication in a subsequent cause.   And when Chief Justice Tilghman and Judge Yeates both expressly waive a decision of it as unnecessary in that case, the question must now be regarded as an entirely open one.

It is proper then to recur to the language of the act.   " In all cases where the plaintiff and defendant having accounts to produce one against another, shall, by themselves, or attorneys or agents, consent to a rule of court for referring the adjustment thereof to certain persons mutually chosen by them in open court, the award or report of such referees being made according to the submission of the parties, and approved of by the court, and entered upon the record or roll, shall have the same effect, and shall be deemed and taken to be as available in law as a verdict given by twelve men ; and the party to whom any sum or sums of money are thereby awarded to be paid, shall have judgment or a *scire facias* for the recovery thereof as the case may require, and as is hereinbefore directed concerning sums found and settled by jury."

[Horton v. Stanley.]

A liberal and repeatedly recognised construction of the act has extended its benefits beyond the cases specifically mentioned ; and as a general rule it may be asserted, that every cause of action is now deemed to be within its scope.

It is to be observed that this law is peculiar to Pennsylvania. Hence the learning of the English books does not directly apply to the present inquiry.   The effect of an award under the act is different from that of an award at common law, either where, in case no suit had been entered, an action lies on the report or on the submission, or where, in the instance of a suit instituted, obedience to the award made under a submission by rule of court, may be enforced by attachment; and it differs also from the effect of an award under the statute of 9 and 10 *William* 3, by which a submission in cases not in court might, by being properly filed of record, be placed on the same footing as if there had previously been a cause depending. The distinguishing feature of our act is that it confers upon the award the character of the verdict of a jury, upon a condition precedent, to wit, that the award be first approved of by the court.

This approbation is far from being a matter of course.   In many instances, the duty of the judges can be discharged only upon a conscientious view of the law and justice of the case.   Can an authority thus imposed upon the court be absolutely taken away by parties who appeal to a law which confers on them its advantages only upon condition that this very authority shall exist and be exerted ?

Can the parties claim the benefit of this proceeding, and yet renounce the very condition upon which that benefit is to be obtained? As a question of imperative obligation on the court, we have no doubt whatever in relation to it.   A party acting under this law must recognise its injunctions, and when he demands the process of the court to enforce a judgment under it, he must submit to the preliminary requisition, without which the act expressly says the judgment shall not be entered.   Parties, it is true, may waive many legal rights ; but they cannot exact a surrender of jurisdiction on the part of the court, nor compel judges to accept a release from a responsibility which the law of the land imposes upon them for public purposes.   The approval by the court is not placed at the option of either or both of the parties.   The requisition of the law looks to the general purity of the administration of justice, and is plainly designed, if that object demands it, to control the parties.

[Horton v. Stanley.]

So far I have viewed the question in the aspect of the alleged, positive and controlling character of the agreement in regard to the court. It remains to be considered whether, while the court deny its force as stripping them absolutely of their power, the agreement may not yet have an important influence upon their judgment on the point of confirming or setting aside the report.

The words "*final* and *conclusive*" in an agreement, it has been shown, present no bar to the filing of exceptions.

When however the parties superadd the words " and neither subject to appeal, exception or stay of execution," they certainly intend something more than a mere submission under the act of 1705 ; and considering the propriety of holding parties to mutual agreements, when not prohibited by law, and the interest of the public not merely *ut sit finis litium*, but that there should be as little litigation as conveniently may be brought before the courts, I believe it to be our duty to give as much effect to such agreements of references as the act of assembly will possibly allow.

It may not perhaps be practicable to lay down a rule to meet every difficulty that may present itself, but we would say generally, that the court should look, in such cases, rigorously to the character of the reasons for setting aside reports. The parties having selected their tribunal, and clothed it with all the power which the law will permit them to confer, should be held strictly to their contract of reference in every instance, in which all has been fairly and honestly done according to the true spirit of the agreement. Some illustrations may be given. Fraud practised by either party on the referees, or corruption or misbehaviour in the referees themselves, would vitiate every transaction, and the agreement of the parties could not have been intended to require the court to sanction such conduct. Again, effect is to be given to awards only, says the act of 1705, when they are made according to the submission of the parties. If then the referees upon a submission of one matter report upon a totally distinct matter, showing a plain deviation from the original intention of the parties, neither party shall be permitted to avail himself of an advantage which never could have been honestly contemplated.

Each case, in short, must be resolved into a question of intention. All matters intended to be submitted to the referees shall be concluded by their fair decision upon them. Whatever might be the opinion of the court upon the same subject, yet where there has been

[Horton v. Stanley.]

no violation of the spirit of the contract, where the matters intended to be decided have been decided in good faith, no interference with the award will be permitted.

Exceptions dismissed, report confirmed.(*a*)

(*a*) See Andrews v. Lee, 3 *Penns. Rep.* 99 (published in 1834).